# In the United States Court of Federal Claims
## No. 06-202 T

(E-Filed:  January 30, 2013)

|  |  |  |
|---|---|---|
| ARBITRAGE TRADING, LLC, | ) | |
| | ) | Partnership Taxation; Court's |
| Plaintiff, | ) | Jurisdiction to Determine |
| | ) | Applicability of Accuracy-Related |
| v. | ) | Penalty Under I.R.C. § 6662 in |
| | ) | Partnership-Level Proceeding |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

David D. Aughtry, Atlanta, GA, for plaintiff.  Linda S. Paine, Houston, TX, of counsel.

Robert J. Higgins, Trial Attorney, with whom where Kathryn Keneally, Assistant Attorney General, David I. Pincus, Chief, and Shelley D. Leonard, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION

HEWITT, Chief Judge

This partnership-level tax proceeding, concerning the 1999 tax year, is brought on behalf of Arbitrage Trading, LLC (Arbitrage or plaintiff) by notice partner of Arbitrage The Robert and Jayne Gunther 1999 Revocable Trust (the Gunther Trust), acting through grantor Robert Gunther.  See Compl. for Readjustment of P'ship Items Under Code § 6226 (Complaint or Compl.), Docket Number (Dkt. No.) 1, ¶ 3.  Defendant is the United States government (the government or defendant), acting through the Internal Revenue Service (IRS).  See Compl. ¶ 12.

Plaintiff initially sought readjustment of a number of items related to Arbitrage's 1999 tax return and, consequently, a refund of $2,371,502 in federal incomes taxes and penalties paid by the Gunther Trust.  See id. ¶ 3.  However, the issues in this case have been significantly narrowed by a stipulation signed by the parties and filed with the court. See Pl.'s Mot. for Summ. J. on Jurisdiction (plaintiff's Motion or Pl.'s Mot.), Dkt. No. 51, Ex. 1 (Joint Stipulation of Settled Issues (Joint Stipulation or Jt. Stip.)) ARBITRAGE

00002[1] ("[T]he only issue remaining in this case is whether or not [certain] tax adjustments . . . are subject to accuracy-related penalties.")

Plaintiff now seeks summary judgment[2] on the ground that, in light of the Joint Stipulation and relevant caselaw, no issue within the jurisdiction of the court remains to be resolved.  Mem. in Supp. of Pl.'s Mot. for Summ. J. on Jurisdiction (plaintiff's Memorandum or Pl.'s Mem.), Dkt. No. 51-1, at 1-2.  Defendant, disagreeing as to whether issues within the jurisdiction of the court remain, requests that the court deny plaintiff's Motion and "order a limited discovery period regarding the penalty issues remaining in this partnership proceeding."  Resp. to Pl.'s Mot. for Partial Summ. J. with Respect to Penalty Jurisdiction (defendant's Response or Def.'s Resp.), Dkt. No. 54, at 24.

Before the court are:  plaintiff's Motion and plaintiff's Memorandum, which was submitted as an attachment to plaintiff's Motion, both filed July 16, 2012; defendant's Response, filed September 7, 2012; plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment with Respect to[ ]Penalty Jurisdiction (plaintiff's Reply or Pl.'s reply), Dkt. No. 59, filed October 15, 2012; defendant's Sur-Reply, Dkt. No. 61, submitted[3] October 25, 2012; and Plaintiff's Sur-Sur-Reply to Defendant's Sur-Reply to Plaintiff's Motion for Partial Summary Judgment with Respect to Penalty Jurisdiction (plaintiff's Sur-Sur-Reply or Pl.'s Sur-Sur-Reply), Dkt. No. 66, filed November 5, 2012.

I.      Background

---

[1]Because many of the exhibits to Plaintiff's Motion for Summary Judgment on Jurisdiction (plaintiff's Motion or Pl.'s Mot.), Docket Number (Dkt. No.) 51, have been marked with conflicting page numbers from previous uses, see, e.g., Pl.'s Mot. Ex. 2 (Notice of Final Partnership Administrative Adjustment (Arbitrage FPAA)) passim, the court cites to the exhibits by their Bates numbers, e.g., ARBITRAGE 00001.  The Affidavit of Joseph W. Odom, Jr. (Odom Affidavit or Odom Aff.), Dkt. No. 51-3, submitted as exhibit six to plaintiff's Motion, also includes its own exhibits.  The court cites to the exhibits to the Odom Affidavit by their respective Bates numbers, e.g., ODOM 00001, and to the Odom Affidavit itself by paragraph number.

[2]Arbitrage Trading, LLC (Arbitrage or plaintiff) characterizes its Motion as a motion for summary judgment on jurisdiction.  See Pl.'s Mot. 1.  However, the court construes plaintiff's Motion as a suggestion that the court lacks jurisdiction.  See infra note 11.

[3]Defendant's Sur-Reply, Dkt. No. 61, was filed by leave of the court on October 26, 2012.  See Order of Oct. 26, 2012, Dkt. No. 62, at 1.  By the same order, the court offered plaintiff an opportunity to file a sur-sur-reply.  See id.

The Gunther Trust invested in Arbitrage, a limited liability company,[4] by making a capital contribution, which included a pair of currency options (the spread transaction), in exchange for a stake in the company (the partnership interest). See Compl. ¶ 16(au)-(av). The Gunther Trust entered into the spread transaction on August 31, 1999, when it purchased from AIG International a one-year euro/United States dollar call option at a premium of $9,000,070 (the purchased option). Id. ¶ 16(s). The purchased option gave the Gunther Trust the right to purchase €170,210,000 from AIG International in exchange for $183,401,275. Id. ¶ 16(t). On the same day, the Gunther Trust sold a different one-year euro/United States dollar call option to AIG International for a premium of $8,910,051 (the sold option). Id. ¶ 16(u). The sold option provided AIG International the right to purchase from the Gunther Trust €170,210,000 for $183,571,485. Id. ¶ 16(u). As a result of these transactions, the Gunther Trust paid AIG International $90,019, the difference between the cost of the purchased option and the sold option. Def.'s Resp. 2; cf. Compl. ¶ 16(s), (u) (stating prices for the two currency options that differ by $90,019).

On or about October 6, 1999 the Gunther Trust contributed the spread transaction and $45,000 to Arbitrage, receiving in return the partnership interest. See Compl. ¶ 16(au)-(av). As a result, Arbitrage calculated and reported on its 1999 tax return that the Gunther Trust had made capital contributions of $130,733. See Aff. of Joseph W. Odom, Jr. (Odom Affidavit or Odom Aff.), Dkt. No. 51-3, at Ex. 1 (1999 Arbitrage tax return) ODOM 00025 (Gunther Trust Schedule K-1). This amount was the sum of the $45,000 contributed by the Gunther Trust and the $85,733 net value of the spread transaction on the contribution date. See Def.'s Resp. 3 n.5; Odom Aff. Ex. 5 (Sept. 30, 1999 letter from AIG International to the Gunther Trust) ODOM 00046 (stating that the values of the currency options on September 30, 1999 were $9,526,327 for the purchased option and $9,440,594 for the sold option; the difference between these values is $85,733). Arbitrage's 1999 tax return claimed losses of $111,931 and other deductions of $9,949. Odom Aff. Ex. 1 (1999 Arbitrage tax return) ODOM 00011, ODOM 00017 (itemizing losses and other deductions). Arbitrage allocated a portion of its losses, other deductions and capitalized organization costs ($51,879) to the Gunther trust. See id. at ODOM 00025 (Gunther Trust Schedule K-1), ODOM 00027 (same).

Defendant asserts that, at the partner level, when the Gunther Trust calculated its outside basis[5] in its interest in Arbitrage, the Gunther Trust did not include the contingent

---

[4]"Unless an entity elects otherwise, a LLC with two or more members will be classified as a partnership" for purposes of federal income taxation. 9 Jacob Mertens, Jr., Law of Federal Income Taxation (Mertens) § 35A:1 (2013). Therefore, in the context of tax law, an LLC is often discussed as though it were a partnership. See, e.g., Jade Trading, LLC v. United States (Jade II), 598 F.3d 1372, 1374 (Fed. Cir. 2010); see also Compl. (Complaint or Compl.), Dkt. No. 1, ¶ 16(au) (stating that Arbitrage is treated as a partnership for purposes of federal taxation).

[5]"[T]he term 'basis' refers to a taxpayer's capital stake in property and is used to determine the gain or loss on the sale or exchange of property . . . ." 3 Mertens § 21:01. "A

liability associated with the sold option and assumed by Arbitrage.  See Def.'s Resp. 2-3.
In other words, defendant alleges that the Gunther Trust determined that its outside basis
in the partnership interest was not the fair market value of its capital contribution
($130,733) or the cost to the Gunther Trust of its capital contribution ($135,019), but
approximately $9 million, a figure that reflected the value of the purchased option and the
$45,000 that the Gunther Trust contributed to Arbitrage, but not the liability associated
with the sold option and assumed by Arbitrage.  See id.

On December 15, 1999 the Gunther Trust redeemed its partnership interest,
receiving Xerox stock valued at $78,854.[6]  See Odom Aff. Ex. 1 (1999 Arbitrage tax
return) ODOM 00025 (Gunther Trust Schedule K-1) (showing distribution of property to
the Gunther Trust worth $78,854); id. at Ex. 14 (confirmation of withdrawal) ODOM
00062 (stating that the Gunther Trust would be "deemed to have withdrawn as of
December 15, 1999"); Pl.'s Mem. 9 (stating that Arbitrage distributed Xerox stock and
euros in redemption of the partners' interests).  Defendant states that the Gunther Trust
subsequently sold the Xerox stock and subtracted from the proceeds of this sale its
claimed outside basis in Arbitrage of $9 million, resulting in an artificial loss of over $9
million at the partner level, which passed through to the Gunthers and was claimed on
their personal income tax return.[7]  See Def.'s Resp. 3 ("[T]he Gunthers claimed that the

---

partnership's basis in its assets is referred to as its 'inside basis,' and a partner's basis in his or
her partnership interest is called his or her 'outside basis.'"  Marriott Int'l Resorts, L.P. v. United
States (Marriott), 586 F.3d 962, 972 (Fed. Cir. 2009) (per curiam).

[6]It is not clear whether a portion of the distribution to The Robert and Jayne Gunther
1999 Revocable Trust (the Gunther Trust) was made in euros rather than Xerox stock.  Compare
Resp. to Pl.'s Mot. for Summ. J. with Respect to Penalty Jurisdiction (defendant's Response or
Def.'s Resp.), Dkt. No. 54, at 3 (stating that the Gunther Trust "received stock worth
approximately $79,000"), and Odom Aff. Ex. 14 (confirmation of withdrawal) ODOM 00062
(stating that the distribution would be made "in the form of equity securities"), with Mem. in
Supp. of Pl.'s Mot. for Summ J. on Jurisdiction (plaintiff's Memorandum or Pl.'s Mem.), Dkt.
No. 51-1, at 9 (stating that Arbitrage distributed euros and Xerox stock), and Odom Aff. Ex. 11
(Arbitrage audit response) ODOM 00054 (stating that Arbitrage distributed €103,115 to the
Gunther Trust).  The precise allocation of euros and Xerox stock in the distribution does not
affect the court's disposition of plaintiff's Motion.

[7]There were three other partners of Arbitrage when the Gunther Trust purchased its
interest.  See Compl. ¶ 16(ay).  Because the Gunther Trust is the only petitioning partner in this
action, its involvement with Arbitrage is described in greater detail in plaintiff's Complaint and
the parties' briefing than is the involvement of the other partners.

Defendant states that two of the other partners, Sentinel Advisors, LLC and Banque Safra
of Luxembourg, "made small, cash-only investments" in Arbitrage.  Def.'s Resp. 24 n.18.
Defendant alleges that the third partner, Highpoint Tower Technology, Inc. (Highpoint), which
"is wholly-owned by Mr. and Mrs. Gunther," id. at 2 n.4, used Arbitrage to shelter $13,000,000
from income tax during the 1999 tax year, id. at 3.

stock was sold at a huge 'loss' of over $9 million, due to the inflated basis claimed in the stock.").

The IRS issued a Notice of Final Partnership Administrative Adjustment (FPAA) dated October 13, 2005, proposing adjustments to a number of Arbitrage's partnership items[8] for the 1999 tax year (Arbitrage FPAA).  See Pl.'s Mot. Ex. 2 (Arbitrage FPAA) ARBITRAGE 00004.  The Arbitrage FPAA consists of:  (1)  a cover letter explaining the partners' right to dispute the FPAA, see id. at ARBITRAGE 00004-6.1;  (2)  a four-page form detailing the proposed numerical adjustments to partnership items, see id. at ARBITRAGE 00006.2-6.5; and  (3)  a document titled "Exhibit A," containing factual and legal determinations and the grounds for the determinations (statement of grounds), see id. at ARBITRAGE 00006.6-6.8.

Defendant alleges that "[t]he IRS issued the FPPA because Arbitrage had engaged in an abusive tax shelter known as 'Son of BOSS.'"  Def.'s Resp. 1-2.  "'BOSS' is an acronym for 'Bond and Option Sales Strategy.'  Son of BOSS [was] a variation on the

---

Defendant appears to be correct.  Like the Gunther Trust, Highpoint contributed a largely offsetting pair of currency options (purchased on the same day as the Gunther Trust's currency options) and a small amount of cash to Arbitrage.  See Odom Aff. Ex. 4 (confirmations from AIG International to Highpoint of August 31, 1999 transactions) ODOM 00044-45 (confirming the purchase and sale of two largely offsetting euro/United States dollar currency options at premiums of approximately $12.5 million each); id. at Ex. 6 (Sept. 30, 1999 letter from AIG International to Highpoint) ODOM 00047 (stating that the values, as of September 30, 1999, of the currency option purchased and the currency option sold by Highpoint were $13,230,855 and $13,111,783, respectively; the difference between these values is $119,072); id. at Ex. 1 (1999 Arbitrage tax return) ODOM 00022 (Highpoint Schedule K-1) (showing contributions by Highpoint during tax year 1999 of $181,572, equal to the net value, on September 30, 1999, of the currency option purchased and the currency option sold by Highpoint ($119,072) plus $62,500).  Highpoint then withdrew from Arbitrage, receiving a distribution of $109,519, which reflected its reported capital contribution ($181,572) offset by $72,053 in partnership losses.  See id. at Ex. 1 (1999 Arbitrage tax return) ODOM 00022 (Highpoint Schedule K-1).

[8]Partnership items are items "more appropriately determined at the partnership level than at the partner level."  26 U.S.C. (I.R.C.) § 6231(a)(3) (1994 & Supp. IV 1999); see also infra Part II.B.

All citations to title 26 of the United States Code (the Tax Code) and to title 26 of the Code of Federal Regulations (the Treasury Regulations) are to the provisions effective in 1999, the taxable year in suit.  See, e.g., Coltec Indus., Inc. v. United States (Coltec), 454 F.3d 1340, 1345 (Fed. Cir. 2006) (applying the provisions of the Tax Code in effect in 1996 to the taxpayer's 1996 tax year).  Neither party contends that changes to the Tax Code or Treasury Regulations made after 1999 have retroactive effect material to the disposition of plaintiff's Motion.

BOSS tax shelter." Stobie Creek Invs. LLC v. United States (Stobie Creek), 608 F.3d 1366, 1368 n.1 (Fed. Cir. 2010). A Son-of-BOSS shelter operated as follows:

> In a Son-of-BOSS transaction, a taxpayer attempts to realize tax benefits by transferring assets encumbered by significant liabilities to a partnership in an attempt to increase the partner's basis in the partnership. Normally, when a partner contributes property to a partnership, the partner's basis in the partnership increases, and when the partnership assumes a partner's liability, the partner's basis decreases. A Son-of-BOSS transaction recognizes a partnership's acquisition of a partner's asset . . . , and disregards the partnership's acquisition of an essentially offsetting liability . . . . By employing this strategy, the taxpayer attempts to generate a tax loss or reduce the gain that would otherwise result from the sale of an asset.

Alpha I, L.P. v. United States (Alpha), 682 F.3d 1009, 1013 (Fed. Cir. 2012) (internal citations omitted); see also I.R.S. Notice 2000-44, 2000-2 C.B. 255 (describing "arrangements [that] purport to give taxpayers artificially high basis in partnership interests and thereby give rise to deductible losses on disposition of those partnership interests").

Thus, a Son-of-BOSS shelter "took advantage of the fact that assets and contingent liabilities were treated differently for tax purposes when contributed to a partnership, thus enabling the taxpayer to generate an artificial loss."[9] Stobie Creek, 608 F.3d at 1368-69. In this case, the encumbered asset transferred by the Gunther Trust to Arbitrage was the spread transaction. See Compl. ¶ 16(q), (u); cf. Odom Aff. Ex. 3 (confirmations from AIG International to the Gunther Trust of August 31, 1999 transactions) ODOM 00042-43 (describing the currency options).

The IRS explained its reasons for the proposed adjustments to Arbitrage's 1999 tax return as follows:

1.      It is determined that neither Arbitrage Trading, LLC nor its purported partners have established the existence of Arbitrage Trading, LLC as [a] partnership as a matter of fact.

2.      Even if Arbitrage Trading, LLC existed as a partnership, the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners. . . .

---

[9]Son-of-BOSS transactions are no longer possible because the treatment of contingent liabilities contributed to a partnership has been modified by regulation. See Marriott, 586 F.3d at 976.

3.     It is determined that Arbitrage Trading, LLC was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and availed of in connection with a transaction or transactions in taxable year 1999, a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code.  It is consequently determined that:

   a.     the Arbitrage Trading, LLC is disregarded and that all transactions engaged in by the purported partnership are treated as engaged in directly by its purported partners.  This includes the determination that the assets purportedly acquired by Arbitrage Trading, LLC, including but not limited to foreign currency options, were acquired directly by the purported partners.

   b.     the foreign currency option(s), purportedly contributed to or assumed by Arbitrage Trading, LLC, are treated as never having been contributed to or assumed by said partnership and any gains or losses purportedly realized by Arbitrage Trading, LLC on the option(s) are treated as having been realized by its partners.

   c.     the purported partners of Arbitrage Trading, LLC should be treated as not being partners in Arbitrage Trading, LLC.

   d.     contributions to Arbitrage Trading, LLC will be adjusted to reflect clearly the partnership's or purported partners' income.

. . . .

7.     It is further determined that, in the case of a sale, exchange, or liquidation of Arbitrage Trading, LLC partners' partnership interests, neither the purported partnership nor its purported partners have established that the bases of the partners' partnership interests were greater than zero for purposes of determining gain or loss to such partners from the sale, exchange, or liquidation of such partnership interest.

Pl.'s Mot. Ex. 2 (Arbitrage FPAA) ARBITRAGE 00006.6-6.7.

   Accordingly, the IRS disallowed Arbitrage's claimed losses of $111,931 and its other deductions of $9,949.  See id. at ARBITRAGE 00006.4 (detailing adjustments to Arbitrage's ordinary income).  The IRS also adjusted Arbitrage's claimed capital contributions ($398,305), distributions ($188,373) and "Outside Partnership Basis" ($22,901,161) to zero.  Id. at ARBITRAGE 00006.4-6.5.

7

In addition to making these adjustments, the IRS found the accuracy-related penalty contained in 26 U.S.C. (I.R.C.) § 6662(a) and (h) (1994 & Supp. IV 1999) to be applicable:

> It is determined that the adjustments of partnership items of Arbitrage Trading, LLC are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. . . .  It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of Arbitrage Trading, LLC.  The penalty shall be imposed on the components of underpayment as follows:
>
> A.    a 40 percent penalty shall be imposed on the portion of any underpayment attributable to [a] gross valuation misstatement . . . .
>
> B.    a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations . . . .
>
> C.    a 20 percent penalty shall be imposed on the underpayment attributable to [a] substantial understatement of income tax . . . .
>
> D.    a 20 percent penalty shall be imposed on the underpayment attributable to [a] substantial valuation misstatement . . . .

Id. at ARBITRAGE 00006.7-6.8.

The adjustments proposed by the IRS would result in an increased tax liability to the Gunther Trust of $2,371,502.  Compl. ¶ 14.  "On March 10, 2006, Mr. Gunther deposited $2,371,502.00 with the IRS field office in Sarasota, Florida," id., and on March 13, 2006 Mr. Gunther filed this action in the United States Court of Federal Claims (Court of Federal Claims), see generally id. (showing filing date of March 13, 2006).  Cf. I.R.C. § 6226(e) (providing for jurisdiction over a readjustment petition in the Court of Federal Claims only if the petitioning partner deposits the amount by which the partner's tax liability would increase as a result of the adjustment proposed by the IRS).  On May 15, 2007 the parties submitted a motion to stay litigation pending the outcome of Jade Trading, LLC v. United States (Jade), No. 03-2164 T (Fed. Cl.).  Joint Mot. for Suspension of Proceedings, Dkt. No. 18, at 1.  In support of their motion, the parties stated, in pertinent part:

> 1.    The instant case involves a claim arising out of a transaction very similar to the transaction at issue in Jade Trading.  Questions

concerning the proper tax treatment of this transaction are currently before the Court in <u>Jade Trading</u> and involve very similar issues to those presented here.

. . . .

4.    Accordingly, the parties believe that binding precedent which will largely dispose of this case will be issued by the [United States Court of Appeals for the] Federal Circuit [(Federal Circuit)] in <u>Jade Trading</u> before this case could be prepared, tried, and decided.

<u>Id.</u> at 1-2. The court granted the parties' motion for a stay of litigation. <u>See</u> Order of May 17, 2007, Dkt. No. 20, at 2.

This case remained stayed during the resolution of <u>Jade</u> by the Court of Federal Claims, <u>see</u> <u>Jade Trading, LLC v. United States</u> (<u>Jade I</u>), 80 Fed. Cl. 11 (2007), and during a subsequent appeal to the Federal Circuit, <u>see</u> <u>Jade Trading, LLC v. United States</u> (<u>Jade II</u>), 598 F.3d 1372 (Fed. Cir. 2010); <u>see also</u> Order of Mar. 29, 2012, Dkt. No. 46, at 2 (lifting stay after the resolution of <u>Jade</u>).

On October 1, 2010 the parties submitted a Joint Stipulation in which they stated as follows regarding the Arbitrage FPAA and the <u>Jade</u> proceedings:

1.    With the exception of accuracy related penalties and "outside partnership basis," Plaintiff[] concede[s] that the Commissioner correctly determined the adjustments in the . . . []Arbitrage FPAA[], and concede[s] that the statement of grounds is correct. . . .

2.    The parties understand . . . the adjustment of "outside partnership basis," in the Arbitrage FPAA to be an adjustment of the "adjusted basis of a partner's interest in a [p]artnership" within the meaning of Section 705(a) of the Internal Revenue Code. Defendant concedes that this adjustment is outside the scope of the Court's subject-matter jurisdiction in this partnership-level case, under the Federal Circuit precedent established in <u>Jade Trading</u>. 598 F.3d at 1380.

3.    As a result of the concessions in paragraphs one and two, the only issue remaining in this case is whether or not the tax adjustments referenced in the first paragraph are subject to accuracy-related penalties. The parties further agree that the issues related to the accuracy-related penalties in this case are substantially similar to the penalty issues that will be addressed on remand in <u>Jade Trading</u>.

Pl.'s Mot. Ex. 1 (Jt. Stip.) ARBITRAGE 00001-02.

On remand, the Court of Federal Claims addressed the remaining issues of the Jade case in a decision affirmed by the Federal Circuit without opinion.  See generally Jade Trading, LLC v. United States (Jade III), 98 Fed. Cl. 453 (2011), aff'd per curiam, (Jade IV), 451 F. App'x 954 (Fed. Cir. 2012) (unpublished).

On March 29, 2012, following a telephonic status conference with the parties, the court lifted the stay and directed the parties to file briefing addressing two issues:  (1) "whether plaintiff conceded in the Joint Stipulation . . . that penalties are applicable at the partnership level" and  (2)  "whether the court has jurisdiction over any of the accuracy-related penalties imposed, in other words, whether there are any penalties in this case that could have been assessed without relying on the partners' outside bases."[10]  Order of Mar. 29, 2012 at 1-2.  Plaintiff's Motion and the associated briefing were filed in accordance with the court's order.

II.   Legal Standards

A.   Dismissal for Lack of Subject Matter Jurisdiction[11]

---

[10]Because this is a partnership-level proceeding, as distinguished from an individual partner-level proceeding, the court can only address partnership items.  See infra Part II.B.  The outside basis of the partners in Arbitrage is an item that must be addressed at the individual partner level, see id., and is therefore beyond the court's subject matter jurisdiction in this proceeding.

[11]Plaintiff characterizes its Motion as a motion for summary judgment under Rule 56 of the RCFC.  See Pl.'s Mot. 1.  However, a motion for summary judgment addresses the merits of a case.  Indium Corp. of Am. v. Semi-Alloys, Inc. (Indium), 781 F.2d 879, 883 (Fed. Cir. 1985).  A challenge to the court's subject-matter jurisdiction that does not concern the merits of a case should be raised in a motion to dismiss under Rule 12(b)(1) or in a suggestion that the court lacks jurisdiction.  Indium, 781 F.2d at 883-84; 5B Charles A. Wright et al., Federal Practice & Procedure (Federal Practice & Procedure) § 1350 (3d ed. 2012); see Jade Trading, LLC v. United States, 98 Fed. Cl. 453, 459 n.5 (2011) (stating that summary judgment is an inappropriate procedural vehicle to address the court's jurisdiction), aff'd per curiam, (Jade IV), 451 F. App'x 954 (Fed. Cir. 2012) (unpublished).  But see Petaluma FX Partners, LLC v. Comm'r (Petaluma I), 131 T.C. 84, 85 (2008) (addressing the court's jurisdiction on a motion for summary judgment), aff'd in part and rev'd in part on other grounds, (Petaluma II), 591 F.3d 649 (D.C. Cir. 2010).

The court therefore treats plaintiff's Motion as a suggestion that the court lacks jurisdiction.  Cf. Indium, 781 F.2d at 883-84; 5B Federal Practice & Procedure § 1350.

The RCFC generally mirror the Federal Rules of Civil Procedure (FRCP).  See RCFC 2002 rules committee note ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").  Rules 12 and 56 of the RCFC are substantially identical to Rules 12 and 56 of the FRCP.  Compare

"[T]he court's lack of subject matter jurisdiction may be asserted at any time by any interested party." 5B Charles A. Wright et al., Federal Practice & Procedure § 1350 (3d ed. 2012). "[T]he party who seeks the exercise of jurisdiction in his favor" has the burden of "alleg[ing] in his pleading the facts essential to show jurisdiction." McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936). If the court determines that it does not have jurisdiction, it must dismiss the claim. RCFC 12(h)(3).

B.     The Court's Jurisdiction in Partnership-Level Tax Proceedings

Partnerships are not subject to income tax. I.R.C. § 701. Instead, partnerships file informational tax returns, see id. § 6031(a), and partners include their distributive shares of the partnership's income, gains, losses, deductions and credits when determining their own income taxes, id. § 702.

Until 1982, adjustments to partnership items were made at the partner level, often resulting in duplicative audits and proceedings, and leading to treatment of partnership items that was inconsistent as between partners. Domulewicz v. Comm'r, 129 T.C. 11, 17 (2007), aff'd in part sub nom. Desmet v. Comm'r, 581 F.3d 297 (6th Cir. 2009). Congress addressed these problems in the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, 96 Stat. 324 (codified as amended, in relevant part, at I.R.C. §§ 6221-31), which established "coordinated procedures for determining the proper treatment of 'partnership items' at the partnership level in a single, unified audit and judicial proceeding." Alpha, 682 F.3d at 1019.

Under TEFRA, before the IRS adjusts partnership items, it must send notice by mail to each notice partner and conduct an administrative proceeding--an audit--at the partnership level. I.R.C. § 6223(a)(1). Any partner is entitled to participate in such an audit. Id. § 6224(a). The IRS must then mail each notice partner an FPAA, the notice of any final partnership administrative adjustment resulting from the audit. Id. § 6223(a)(2). Within ninety days after the mailing of the FPAA, the partnership's designated tax matters partner may file a petition for readjustment of any partnership items in the United States Tax Court (Tax Court), the appropriate United States district court or the Court of Federal Claims. Id. § 6226(a). If the tax matters partner does not do so, any notice partner may file a petition for readjustment within the following sixty days. Id. § 6226(b)(1).

Whether a tax item is a "partnership item" or a "nonpartnership item" governs whether it is addressed in partnership-level proceedings or individual partner-level proceedings. Keener v. United States, 551 F.3d 1358, 1361 (Fed. Cir. 2009); Crnkovich v. United States, 202 F.3d 1325, 1328-29 (Fed. Cir. 2000) (per curiam). A "partnership item" is "any item required to be taken into account for the partnership's taxable year" if regulations provide that the "item is more appropriately determined at the partnership

---

RCFC 12 and RCFC 56 with FRCP 12 and FRCP 56. Therefore, the court relies on authorities interpreting FRCP 12 and FRCP 56 as well as authorities interpreting RCFC 12 and RCFC 56.

level than at the partner level." I.R.C. § 6231(a)(3).  A "nonpartnership item" is "an item which is (or is treated as) not a partnership item." Id. § 6231(a)(4).  The applicable regulations[12] state that "[i]tems of income, gain[,] loss, deduction, or credit of the partnership" are partnership items. 26 C.F.R. (Treas. Reg.) § 301.6231(a)(3)-1(a)(1)(i) (1999).  Certain legal and factual determinations are also partnership items. Id. § 301.6231(a)(3)-1(b).  Whether a partnership is a sham and lacks economic substance, for instance, is a partnership item. Petaluma FX Partners, LLC v. Comm'r (Petaluma II), 591 F.3d 649, 653 (D.C. Cir. 2010); see Keener, 551 F.3d at 1366 ("[T]he nature of a partnership's transaction--and, specifically, whether a partnership transaction is a 'sham'--is a partnership item.").

A third type of tax item, an "affected item," is "any item to the extent such item is affe[c]ted by a partnership item." I.R.C. § 6231(a)(5).  A penalty related to a partnership item, for example, is an affected item. See Temp. Treas. Reg. § 301.6231(a)(5)-1T(d); Tigers Eye Trading, LLC v. Comm'r (Tigers Eye), 138 T.C. 67, 89 (2012), appeal docketed sub nom. Logan Trust v. Comm'r, No. 12-1148 (D.C. Cir. Mar. 16, 2012).  A partner's outside basis in its partnership interest is also an affected item. Jade II, 598 F.3d at 1380.  In general, affected items are determined at the individual partner level. Id. at 1379.  However, in 1997 Congress amended title 26 of the United States Code (the Tax Code) to provide that "the applicability of any penalty," although an affected item, is to be determined at the partnership level instead of at the individual partner level.[13]

---

[12]Certain of the regulations applicable to Arbitrage's 1999 tax year were temporary regulations.  These temporary regulations were adopted in 1984 and amended in 1987 and 1999. See Modifications and Additions to the Unified Partnership Audit Procedures, 64 Fed. Reg. 3,837 (Jan. 26, 1999) (codified at 26 C.F.R. (Treas. Reg.) pt. 301); Miscellaneous Provisions Relating to the Tax Treatment of Partnership Items; Procedure and Administration, 52 Fed. Reg. 6,779 (Mar. 5, 1987) (codified at Treas. Reg. pt. 301); Procedure and Administration, 49 Fed. Reg. 48,536 (Dec. 13, 1984) (codified at Treas. Reg. pt. 301).  These temporary regulations are no longer in force, having been replaced with final regulations in 2001. See Unified Partnership Audit Procedures, 66 Fed. Reg. 50,541, 50,544 (Oct. 4, 2001) (stating that the final regulations are applicable to "partnership taxable years beginning on or after October 4, 2001") (codified in relevant part as amended at Treas. Reg. pt. 301).

[13]The committee report of the United States House of Representatives Committee on the Budget explains the purpose of the change as follows:

> Many penalties are based upon the conduct of the taxpayer.  With respect to partnerships, the relevant conduct often occurs at the partnership level.  In addition, applying penalties at the partner level through the deficiency procedures following the conclusion of the unified proceeding at the partnership level increases the administrative burden on the [Internal Revenue Service (IRS)] and can significantly increase the [United States] Tax Court's [(Tax Court)] inventory.

H.R. Rep. No. 105-148, at 594 (1997), reprinted in 1997 U.S.C.C.A.N. 678, 988.

Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1238(a), 111 Stat. 788, 1026 (codified in relevant part at I.R.C. § 6221).

As a result of TEFRA, the jurisdiction of a court hearing a challenge to an FPAA extends to "all partnership items . . . and the applicability of any penalty . . . which relates to an adjustment to a partnership item." I.R.C. § 6226(f). Nonetheless, a court's determination with respect to the applicability of penalties in a partnership-level proceeding is necessarily an abstract one because the amount of the penalty must be determined at a later time at the individual partner level.[14] Southgate Master Fund, L.L.C. v. United States (Southgate), 659 F.3d 466, 469 n.4 (5th Cir. 2011); see Tigers Eye, 138 T.C. at 142 ("[P]enalty calculations cannot be made until the [partners] make the necessary calculations following completion of the partnership-level proceeding.").

C.      The Accuracy-Related Penalty

Section 6662 of the Tax Code sets out an accuracy-related penalty applicable, under certain circumstances, to "an underpayment of tax required to be shown on a return."[15] I.R.C. § 6662(a). Pursuant to § 6662, a penalty of 20% of the portion of any underpayment attributable to one or more of the following shall be added to the tax: "(1) Negligence or disregard of rules or regulations. (2) Any substantial understatement of income tax. (3) Any substantial valuation misstatement" regarding the value or basis of property. Id. §6662(a), (b)(1)-(3); see id. § 6662(e) (defining "substantial valuation misstatement"). To the extent that a portion of the underpayment to which § 6662 applies is attributable to one or more larger "gross valuation misstatements," the penalty is increased to 40%.[16] Id. § 6662(h)(1). If a portion of an underpayment is attributable to more than one type of misconduct, the penalty is not stacked. Treas. Reg. § 1.6662-2(c).

---

[14]If no factual determinations are required at the partner level, the penalty may be assessed by a computational adjustment of each partner's tax liability. See I.R.C. § 6230(a) (1994 & Supp. IV 1999); Olson v. United States, 172 F.3d 1311, 1317 (Fed. Cir. 1999) (stating that computational adjustments to a partner's return to reflect an adjustment to a partnership item are not subject to deficiency procedures, allowing for automatic assessment). If factual determinations are required at the partner level, the IRS must initiate deficiency procedures by issuing a notice of deficiency. See Olson, 172 F.3d at 1317. See generally Bush v. United States, 655 F.3d 1323 (Fed. Cir. 2011) (en banc) (discussing when a notice of deficiency is required).

[15]Because this Opinion addresses only the court's jurisdiction with respect to the applicability of the accuracy-related penalty and not whether the accuracy-related penalty should actually be applied, the court describes the penalty only insofar as relevant to the jurisdictional arguments raised by the parties.

[16]If the correct basis of property is zero but the basis claimed is greater than zero, there is necessarily a gross valuation misstatement with respect to such property. Treas. Reg. § 1.6662-5(g).

For instance, if a portion of an underpayment of tax is attributable to both negligence and a gross valuation misstatement, the maximum penalty is 40%, not 60%.  Id.

III.    Discussion

A.    Jade, Petaluma and the Parties' Joint Stipulation

The parties disagree as to whether the issue of the court's jurisdiction has been resolved by Jade.  Plaintiff argues that defendant agreed in the Joint Stipulation "to resolve this case by reference to Jade [IV] on remand."  Pl.'s Mem. 4.  Plaintiff contends that this case and Jade are "indistinguishable,"[17] id. at 8, and that defendant's arguments

---

[17]In support of this contention, plaintiff submitted the affidavit of Mr. Joseph W. Odom, Jr.  See generally Odom Aff.  Mr. Odom is a certified public accountant and a former internal revenue agent.  Id. ¶¶ 3-5.  Defendant requests that the court strike the Odom Affidavit or permit defendant to take discovery of Mr. Odom.  See generally Def.'s Mot. to Strike the Aff. of Joseph W. Odom, Jr[.] or, in the Alternative, for Rule 56(d) Disc. (defendant's Motion or Def.'s Mot.), Dkt. No. 55.  Before the court regarding defendant's objection are defendant's Motion, filed September 7, 2012; Plaintiff's Response to Defendant's Motion to Strike the Affidavit of Joseph W. Odom, Jr. or, in the Alternative, for Rule 56(d) Discovery (plaintiff's Response or Pl.'s Resp.), Dkt. No. 58, filed October 15, 2012; Defendant's Reply Brief in Support of its Motion to Strike the Affidavit of Joseph W. Odom, Jr[.], or, in the Alternative, for Rule 56(d) Discovery (defendant's Reply or Def.'s Reply), Dkt. No. 60, filed October 25, 2012; and Plaintiff's Corrected Sur-Reply to Defendant's Reply Brief in Support of its Motion to Strike the Affidavit of Joseph W. Odom, Jr. (plaintiff's Sur-Reply or Pl.'s Sur-Reply), Dkt. No. 68, filed November 12, 2012.

Because the court construes plaintiff's Motion as a suggestion that the court lacks subject matter jurisdiction, see supra note 11, it is not clear that a motion to strike the Odom Affidavit--a motion normally made in the context of a summary judgment motion, cf. 10B Federal Practice & Procedure § 2738 (describing motions to strike affidavits filed in support of motions for summary judgment)--is the correct form in which to make defendant's request.  However, the court agrees with defendant that the portions of the Odom Affidavit to which defendant objects may not be considered at this time.

The relevant portion of the affidavit consists of:  (1)  Mr. Odom's conclusion that Arbitrage and the partnership at issue in Jade Trading, LLC v. United States (Jade), No. 03-2164 T (Fed. Cl.), "were substantially similar," see Odom Aff. ¶¶ 9-10;  (2)  a list of observations in support of this conclusion (for instance, that both Jade and Arbitrage recorded partner contributions at fair market value, see id. ¶ 9); and  (3)  a list of the transactional and tax documents that Mr. Odom examined, which are also attached as exhibits, see id. ¶ 8; id. at Exs. 1-33.  Defendant objects to Mr. Odom's conclusion and observations, see Def.'s Mot. 2-3; Def.'s Reply 1-7, but not to the documents, see Def.'s Mot. 1 n.1; Def.'s Reply 7.

Having considered the parties' arguments, the court concludes that defendant's Motion must be GRANTED.  See infra Part IV.  Mr. Odom's analysis of transactional and tax documents to compare the structure of two alleged tax shelters is based on specialized

related to penalty jurisdiction were "repeatedly heard and repeatedly rejected" in Jade, id. at 9.  Plaintiff further contends that defendant's arguments "fundamentally rest on outside basis, which is a partner-level affected item beyond this Court's jurisdiction," id., and that the doctrine of stare decisis requires the court to find that it lacks jurisdiction to consider the applicability of the accuracy-related penalty, see id. at 20-24.

Defendant responds that, despite its stipulation "that the penalty issues in this case and Jade were 'substantially similar,' the penalty proceedings in Jade do not definitively resolve the penalty jurisdiction issue." Def.'s Resp. 5.  Although defendant raised arguments in Jade III similar to some of the arguments it raises here, defendant notes that it did so only on remand after trial, and that the Court of Federal Claims rejected

---

knowledge, making it the testimony of an expert witness.  Cf. Fed. R. Evid. 701, 702.  Plaintiff's claim that Mr. Odom is offered "as a lay witness," Pl.'s Resp. 10, is unpersuasive.  It is clear that Mr. Odom was chosen by plaintiff specifically because of his expertise in tax matters, which plaintiff describes in detail.  See id. at 1-2.  Plaintiff's contention that Mr. Odom merely provided a summary of documents pursuant to Rule 1006 of the Federal Rules of Evidence, see Pl.'s Sur-Reply 4-6; Fed. R. Evid. 1006 (allowing for use of a summary "to prove the contents of voluminous writings"), is untimely--being raised in a sur-reply--and unpersuasive given the complexity of the documents and the specialized knowledge employed by Mr. Odom to interpret them and arrive at his conclusion, cf. Fed. R. Evid. 701 (providing that a lay witness is limited to testimony "not based on scientific, technical, or other specialized knowledge").

The use of expert witnesses in Son-of-BOSS cases is common.  See, e.g., Jade Trading, LLC v. United States, 80 Fed. Cl. 11, 38 (2007), aff'd in part, vacated in part, and rev'd in part, all on other grounds, Jade II, 598 F.3d 1372.  However, Mr. Odom has not yet been identified as an expert witness as required by Rule 26 of the Rules of the United States Court of Federal Claims (RCFC).  See Def.'s Mot. 2-3; cf. RCFC 26(a)(2) (requiring disclosure of an expert witness's identity, accompanied by a written report, at least 90 days before the date set for trial).  Defendant has therefore not had the opportunity to take discovery of Mr. Odom or to develop rebuttal expert testimony.  Cf. RCFC 26(b)(4)(A) (providing that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial" after the filing of the expert's report).  It would be improper to allow Mr. Odom's testimony at this point.

The court notes, however, that excluding the testimony in Mr. Odom's affidavit does not affect the outcome of this Opinion.  Defendant does not object to the documents submitted as attachments to Mr. Odom's affidavit.  Def.'s Mot. 1 n.1; Def.'s Reply 7.  Both parties agree with Mr. Odom's conclusion that Arbitrage and the partnership in Jade are similar.  See Pl.'s Resp. 7 ("'As plaintiff correctly identified, the tax shelters at issue in Jade and in this case are structurally similar.'" (quoting Def.'s Resp. 5)).  And defendant's concern, see Def.'s Mot. 3, that the court will conclude from the structural similarity of the partnerships in Jade and in this case--a largely factual determination--that this case is identical to the Jade case--a legal conclusion--is unwarranted.

defendant's arguments partly because it found them untimely.[18]  See id. at 6.  Defendant contends that, because the Federal Circuit did not state in Jade IV the ground on which it was affirming the Court of Federal Claims' conclusion that it lacked jurisdiction--timeliness or the merits of defendant's jurisdictional arguments--"it is impossible to know whether the Federal Circuit agreed that the government's partnership-item adjustments were raised too late or, instead, rejected those adjustments as bases for penalties."[19]  Id.

With regard to the Joint Stipulation, the court agrees with defendant.  A stipulation that this case and Jade are substantially similar is not a stipulation that this case and Jade are identical; nor can the Joint Stipulation dictate whether the court has subject matter jurisdiction.  Cf. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (stating that a court lacking subject matter jurisdiction cannot reach the merits of the case, even if the parties agree to the contrary); Mitchell v. Maurer, 293 U.S. 237, 244 (1934) ("[L]ack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties.").  Further, as explained below, plaintiff is incorrect that defendant's view of the court's jurisdiction is contradicted by Jade.  See infra Part III.B.1-2, 4.

A brief summary of the decisions issued in Jade will provide context for the court's discussion of the parties' arguments.  Like this case, Jade was a partnership-level proceeding related to an alleged Son-of-BOSS tax shelter.  See Jade I, 80 Fed. Cl. at 57 n.83, 59.  In Jade I, the Court of Federal Claims upheld a penalty related to an adjustment of the outside basis that the partners had claimed in the partnership.  See id. at 52, 60.  On appeal, the government conceded that outside basis is an affected item, rather than a partnership item, but argued that the Court of Federal Claims nevertheless had jurisdiction to make adjustments to the outside basis of each partner and to apply the

---

[18]Defendant contends that Jade also can be distinguished on the ground that the Notice of Final Partnership Administrative Adjustment (FPAA) issued in Jade applied penalties only to the outside basis of the partners, whereas the FPAA in this case stated that accuracy-related penalties "'appl[y] to all underpayments of tax attributable to adjustments of partnership items of Arbitrage.'"  Def.'s Resp. 6-7 (alterations in original) (emphasis omitted) (quoting Pl.'s Mot. Ex. 2 (Arbitrage FPAA) ARBITRAGE 00006.7).  However, in a partnership-level proceeding, the court's jurisdiction extends to all partnership items for the partnership taxable year, not merely the items adjusted in the FPAA.  Temp. Treas. Reg. § 301.6226(f)-1T(a); Tigers Eye Trading, LLC v. Comm'r (Tigers Eye), 138 T.C. 67, 95 (2012), appeal docketed sub nom. Logan Trust v. Comm'r, No. 12-1148 (D.C. Cir. Mar. 16, 2012).

[19]Defendant also notes that the decision of the United States Court of Appeals for the Federal Circuit (Federal Circuit) in Jade IV was nonprecedential because it was entered pursuant to Federal Circuit Rule 36.  Def.'s Mot. 6; see Fed. Cir. R. 36 (providing for the entry of judgment of affirmance without opinion); Rates Tech., Inc. v. Mediatrix Telecom, Inc., 688 F.3d 742, 750 (Fed. Cir. 2012) (stating that an opinion under Federal Circuit Rule 36 "does not endorse or reject any specific part of the trial court's reasoning" and "has no precedential value"); Jade IV, 451 F. App'x at 955 (affirming without opinion and citing Rule 36).

penalty because outside basis "is an affected item" as to which "most (if not all) of the components . . . are themselves partnership items." Jade II, 598 F.3d at 1379. The Federal Circuit disagreed. Id. at 1380. Applying the analysis developed by the United States Court of Appeals for the District of Columbia Circuit (D.C. Circuit) in Petaluma II,[20] a "factually analogous case" in which the parties had presented "strikingly similar" arguments, the court concluded that "'[t]he fact that a determination seems obvious or easy does not expand the court's jurisdiction beyond what the statute provides. In other words, it does not matter how low the fruit hangs when one is forbidden to pick it.'" Id. at 1379-80 (quoting Petaluma II, 591 F.3d at 655). The Federal Circuit held that "[o]utside basis is an affected item, not a partnership item; thus, the penalty here relates to an adjustment of an affected item, not a partnership item. Accordingly, the trial court did not have jurisdiction over the applicability of this particular penalty." Id. at 1380. Because the Court of Federal Claims had addressed only an accuracy-related penalty related to the outside basis of the partners, the Federal Circuit remanded for a determination of "whether any penalties could have been assessed without relying on the [partners'] outside bases." Id.

On remand, defendant argued that the court had jurisdiction to apply a penalty because of the disallowance of the basis that the partnership had improperly claimed in the assets contributed by the partners and because of the determinations that Jade was a sham and that the spread transaction lacked economic substance. Jade III, 98 Fed. Cl. at 460-61. Defendant also argued that the disallowance of certain losses supported its argument regarding the partnership's disallowed basis in partner contributions. Id. at 462. The Court of Federal Claims rejected these contentions for two reasons. First, because defendant raised them for the first time after a trial and several years of litigation, the court found them untimely. Id. at 461. Second, the court was not persuaded that any of the partnership items at issue could support a penalty without reference to the outside basis of the partners.[21] Id. at 454, 459. Because the Federal Circuit then affirmed the

---

[20]Because of the similarities between the decisions, the court finds cases discussing Petaluma II to be of assistance in its analysis of Jade II.

[21]Similarly, on remand in Petaluma III, the Tax Court concluded that it lacked jurisdiction to consider the applicability of the accuracy-related penalty. Petaluma FX Partners, LLC v. Comm'r (Petaluma III), 135 T.C. 581, 587 (2010). However, the Tax Court later explained that it reached this conclusion in light of its narrow interpretation of the mandate with which the case was remanded. Petaluma FX Partners, LLC v. Comm'r, No. 24717-05, T.C. Mem. 2012-142, slip op. at 13-14 (to be published at 103 T.C.M. (CCH) 1769) (May 17, 2012). The decision in Petaluma III was "narrowly confine[d]" and therefore does not conflict with the Tax Court's later opinion in Tigers Eye, id. at 14-15. (In Tigers Eye, the Tax Court found that it had jurisdiction to apply the accuracy-related penalty, regardless of whether outside basis is an affected item. See infra Part III.B.1-2.) Appeals of both Petaluma III and Tigers Eye remain pending. See Petaluma III, 135 T.C. 581, appeal docketed, No. 12-1364 (D.C. Cir. Aug. 22, 2012); Tigers Eye, 138 T.C. 67, appeal docketed sub nom. Logan Trust v. Comm'r, No. 12-1148 (D.C. Cir. Mar. 16, 2012).

decision of the Court of Federal Claims without discussion, it is impossible to determine whether it rejected defendant's arguments on their merits or because they were untimely. See Jade IV, 451 F. App'x at 955; see also supra note 19 (discussing Jade IV's lack of precedential value).

In this case, defendant timely presents three grounds for penalty jurisdiction:  (1) Arbitrage's disallowed losses and other deductions;  (2)  Arbitrage's disallowed contributions and distributions; and  (3)  the basis in the distributed property in light of the determination that Arbitrage should be disregarded.  See Def.'s Resp. 5; see also infra Part III.B (discussing whether the court has penalty jurisdiction on these grounds). Unlike the Jade defendant's jurisdictional arguments, defendant's jurisdictional arguments in this case are timely and address how any penalty found applicable by the court would relate to the adjustment of these partnership items without reference to the outside basis of the partners in the partnership.  See infra Part III.B.1-2, 4.  As discussed below, defendant's description of the court's jurisdiction under TEFRA and Jade is largely correct.  See infra Part III.B.

B.      The Court's Penalty Jurisdiction Under TEFRA

The court's jurisdiction in this partnership-level proceeding extends to "all partnership items . . . and the applicability of any penalty . . . which relates to an adjustment to a partnership item."  I.R.C. § 6226(f).  Whether the court has jurisdiction to consider the applicability of the accuracy-related penalty therefore depends on whether the relevant penalty relates to the adjustment of a partnership item--as distinguished from the adjustment of an affected item or a nonpartnership item.  See id.  Further, penalty jurisdiction must be based upon the adjustment of a partnership item that results in an underpayment of tax.  See Jade III, 98 Fed. Cl. at 461 (finding that the court lacked jurisdiction to consider the applicability of a penalty because "[d]efendant has not demonstrated that any understatement of tax, let alone an understatement sufficient to trigger penalties, resulted from the contribution of the spread transaction"); cf. infra Part III.B.3 (discussing the Petaluma II court's conclusion that the determination that a partnership is a sham and should be disregarded for tax purposes--a determination that does not, standing alone, result in an underpayment of tax--does not create jurisdiction to consider the applicability of the accuracy-related penalty).

Defendant contends that "jurisdiction may be exercised here because penalties relate to adjustments of partnership items, namely":  (1)  Arbitrage's losses and other deductions;  (2)  Arbitrage's contributions and distributions; and  (3)  the basis of the purported partners in the distributed property in light of the determination that Arbitrage should be disregarded.  Def.'s Resp. 5 (emphasis omitted).  The court considers each of these items in turn.

1.      Losses and Other Deductions

The parties agree that the FPAA correctly disallowed Arbitrage's claimed losses of $111,931 and its other deductions of $9,949.  Pl.'s Mot. Ex. 1 (Jt. Stip.) ARBITRAGE 00001; see id. at Ex. 2 (Arbitrage FPAA) ARBITRAGE 00006.4 (disallowing Arbitrage's losses and other deductions).  Defendant contends that the court has jurisdiction to determine whether the accuracy-related penalty applies with respect to these adjustments.  Def.'s Resp. 15-16.  Defendant is correct.

The court's jurisdiction extends to "all partnership items . . . and the applicability of any penalty . . . which relates to an adjustment to a partnership item."  I.R.C. § 6226(f).  Whether the court has jurisdiction to determine if the accuracy-related penalty applies to Arbitrage's disallowed losses and other deductions depends on whether the penalty "relates to an adjustment to a partnership item."  See id.

Whether losses improperly claimed on a partnership return could support a penalty at the partnership level was not discussed by the Court of Federal Claims on remand in Jade III.[22]  The Jade III court characterized defendant's argument in that case to be that the partnership's improperly claimed losses were "another example" of why the partnership's inside basis in assets contributed by the partners should be reduced to zero.  Jade III, 98 Fed. Cl. at 462.  Defendant did not argue in Jade III, as it now does, that denial of the claimed losses could result in an underpayment of tax warranting a penalty.  See id.; Def.'s Resp. 15-16.  The court concludes that denial of the claimed losses could yield that result.

The Tax Court addressed this issue in Tigers Eye, a recent Son-of-BOSS case.  See Tigers Eye, 138 T.C. at 130-34.  In a court-reviewed opinion,[23] the Tax Court concluded that, consistent with Petaluma II and Petaluma III--and therefore with Jade II and Jade III--a court has jurisdiction in partnership-level proceedings to disallow partnership losses and other deductions and to find the accuracy-related penalty applicable to these adjustments.  See id.  Here, the FPAA issued to Arbitrage determined that "the accuracy-related penalty under Section 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of Arbitrage Trading, LLC."  Pl.'s Mot. Ex. 2 (Arbitrage FPAA) ARBITRAGE 00006.7.  A partnership's losses and other deductions are partnership items.  Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i).  Because partners are required to include their share of a

_____

[22]The FPAA in Petaluma I did not disallow or adjust losses or other deductions.  See Petaluma I, 131 T.C. at 87 (listing the adjustments made in the FPAA); Tigers Eye, 138 T.C. at 110 n.36 (stating that the FPAA in Petaluma I did not adjust losses or other deductions).

[23]Although decisions of the Tax Court are not binding on this court, the Tax Court "is a specialized court with expertise in tax matters."  Hinck v. United States, 446 F.3d 1307, 1314 (Fed. Cir. 2006), aff'd, 550 U.S. 501 (2007).  Decisions of the Tax Court are issued by a single judge, but the chief judge may direct that a decision be reviewed by the full Tax Court.  See I.R.C. § 7460(b).

partnership's losses and deductions on their own returns when determining their own income tax, see I.R.C. § 702(a), the disallowance of these losses and deductions at the partnership level could have resulted in an underpayment of tax by individual partners of Arbitrage to which the accuracy-related penalty could apply, cf. Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i).  The applicability of such a penalty is therefore within the court's jurisdiction because the penalty would "relate[] to an adjustment to a partnership item," id. § 6226(f), that is, the disallowance of Arbitrage's losses and other deductions. The applicability of the penalty can be determined without reference to the outside basis of the partners, which, as an affected item, is beyond the court's jurisdiction in this partnership-level proceeding.  Cf. Fid. Int'l Currency Advisor A Fund, LLC v. United States (Fidelity I), 747 F. Supp. 2d 49, 237-38 (D. Mass. 2010), aff'd, (Fidelity II), 661 F.3d 667 (1st Cir. 2011); Tigers Eye, 138 T.C. at 132 ("The [Petaluma II court] did not hold that the Tax Court lacks jurisdiction to determine the applicability of any penalty that relates to an adjustment of a partnership item that happens to be an element of outside basis.").[24]

Plaintiff does not argue otherwise and acknowledges that the disallowance of the losses and other deductions could result in an underpayment of tax, see Pl.'s Reply 12; Pl.'s Sur-Sur-Reply 1-2.  Plaintiff also concedes that the IRS's disallowance of Arbitrage's losses and other deductions was correct.  See Pl.'s Sur-Sur-Reply 1 ("Plaintiff has conceded those losses."); Pl.'s Mot. Ex. 1 (Jt. Stip.) ARBITRAGE 00001.  However, it is plaintiff's view, in light of the small size of any potential penalty related to the disallowed losses and other deductions (which plaintiff calculates to be approximately $17,000 if the court finds a gross valuation misstatement), that, if the court does not also have jurisdiction to review the applicability of other penalties, "[t]his litigation would not have been worth Defendant's, Plaintiff's or the Court's time."  Pl.'s Sur-Sur-Reply 1-2.  But, as defendant notes, the court's jurisdiction in this partnership-level proceeding to

---

[24]Because the applicability of this penalty can be determined without reference to the outside basis of the partners in Arbitrage, plaintiff's concern that the court's application of the accuracy-related penalty would be contrary to the procedures set out in the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, 96 Stat. 324 (codified as amended, in relevant part, at I.R.C. §§ 6221-31), and would deny both Arbitrage and its partners due process is unfounded.  Cf. Pl.'s Mem. 7 ("Jade precludes any attempt by the IRS here to summarily compute penalties on partner-level outside basis without an affected item proceeding."); Reply to Def.'s Resp. to Pl.'s Mot. for Summ. J. with Respect to[ ]Penalty Jurisdiction (plaintiff's Reply or Pl.'s Reply), Dkt. No. 59, at 4-8, 13-15.  The court's exercise of jurisdiction will not "leave both the partnership and the partner defenseless."  Cf. Pl.'s Reply 16 (capitalization and emphasis omitted).  Under TEFRA, Arbitrage may present any partnership-level defenses to the penalty in this partnership-level proceeding.  See, e.g., Stobie Creek Invs. LLC v. United States, 608 F.3d 1366, 1380-81 (Fed. Cir. 2010).  If the court finds the accuracy-related penalty applicable, the partners of Arbitrage may present any partner-level defenses in subsequent partner-level proceedings.  See I.R.C. § 6230(c)(4); Temp. Treas. Reg. § 301.6221-1T(c), (d).

determine the applicability of a penalty is not negated by the small size of the potential penalty. <u>Cf.</u> Def.'s Resp. 16.

Because Arbitrage's losses and other deductions are partnership items, Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i), the court has jurisdiction in this partnership-level proceeding to determine whether the accuracy-related penalty applies to the portion of any underpayment attributable to the adjustment of these items, <u>cf.</u> I.R.C. § 6226(f) (providing that applicability of a penalty is within the court's jurisdiction when the penalty relates to adjustment of a partnership item).

2.      Contributions and Distributions

The parties agree that a partnership's contributions and distributions are capital account entries, the adjustment of which does not itself give rise to an underpayment of tax. <u>See</u> Pl.'s Mem. 11; Def.'s Resp. 18; <u>see also</u> Pl.'s Reply 8 (arguing that the accuracy-related penalty "cannot apply at the partnership level to items that, as a practical matter, create no underpayments"). Notwithstanding defendant's contention that "contributions and distributions were the mechanism through which the sheltering of income was executed," Def.'s Resp. 18, the court agrees with plaintiff that contributions and distributions, standing alone, do not create an underpayment of tax to which a penalty could apply, <u>cf.</u> <u>Jade III</u>, 98 Fed. Cl. at 461 (finding that the court lacked penalty jurisdiction when there was no understatement of tax); <u>see</u> Pl.'s Mem. 12.

However, the partnership's inside basis in property contributed by the partners is a partnership item. Treas. Reg. § 301.6231(a)(3)-1(c)(2); <u>Stobie Creek</u>, 608 F.3d at 1380. To the extent that Arbitrage's claimed losses are attributable to an overstatement of the partnership's claimed basis in the partners' contributions, <u>see supra</u> Part III.B.1 (finding that the court has jurisdiction to determine whether the accuracy-related penalty applies to any underpayment attributable to adjustment of Arbitrage's losses and other deductions), the court has jurisdiction to apply the accuracy-related penalty to the adjustment of Arbitrage's claimed contributions, <u>cf.</u> <u>Fidelity I</u>, 747 F. Supp. 2d at 238; <u>Tigers Eye</u>, 138 T.C. at 131-34; <u>106 Ltd. v. Comm'r</u>, 136 T.C. 67, 73-76 (2011) (concluding that the court had jurisdiction to apply the accuracy-related penalty to the claimed losses generated by the partnership's claiming an inflated inside basis in distributed property), <u>aff'd</u>, 684 F.3d 84 (D.C. Cir. 2012).

3.      That Arbitrage was Disregarded, Standing Alone, Does Not Create Penalty
        Jurisdiction

Defendant contends that the IRS's determination that Arbitrage was a sham partnership, lacked economic substance and should be disregarded for tax purposes, standing alone, grants the court jurisdiction to apply the accuracy-related penalty to any associated losses claimed by the partners on their individual tax returns. <u>See</u> Def.'s Resp. 20-22. Defendant notes that, although the Court of Federal Claims concluded in <u>Jade III</u>

that a court in partnership-level proceedings may only apply a penalty that "'relate[s] directly to a numerical adjustment to a partnership item,'" the words "directly" and "numerical" do not appear in the statute. Id. at 12-13 (emphasis omitted) (quoting Jade III, 98 Fed. Cl. at 460 (quoting Petaluma III, 135 T.C. at 587)); cf. I.R.C. § 6226(f) (stating that a court has jurisdiction in partnership-level proceedings to determine "the applicability of any penalty . . . which relates to an adjustment to a partnership item"). Instead, defendant contends, the word "relate" in TEFRA's grant of penalty jurisdiction should be read broadly "to further the legislative intent to unify penalty determinations where the penalties have any connection to a partnership item adjustment." Def.'s Resp. 13.

Because disregarding or nullifying Arbitrage will impact the losses claimed by the partners on their individual returns, defendant contends, the "sham determination indirectly affects an adjustment to which penalties can apply." Id. at 22 (internal quotation marks omitted). In other words, defendant argues that "[n]ullification of the Arbitrage partnership is a partnership item, and penalty determinations flow from nullification." Id.

This argument was squarely addressed and rejected by the D.C. Circuit in Petaluma II. In Petaluma I, the Tax Court had "held that its determination that Petaluma should be disregarded for tax purposes sufficed to give it jurisdiction over accuracy-related penalties." Petaluma II, 591 F.3d at 655. The D.C. Circuit disagreed, stating that, although the determination that the partnership should be disregarded for tax purposes is a partnership item, it did not create jurisdiction for the Tax Court to adjust or apply an accuracy-related penalty to the claimed outside basis of the partners in the partnership, which remains an affected item. Id. Similarly, in this case, the nullification of Arbitrage does not alone create jurisdiction for the court to apply a penalty.

However, the court has jurisdiction to determine the applicability of any penalty which relates to an adjustment of Arbitrage's losses or other deductions or to the correct basis of the Xerox stock purportedly distributed to the partners. See supra Part III.B.1-2; infra Part III.B.4

4.    Arbitrage Disregarded for Tax Purposes, but the Basis of the Distributed Xerox Stock Remains a Partnership Item

The parties have stipulated that the IRS's determination that Arbitrage is to be disregarded for tax purposes is correct and that Arbitrage's transactions are to be treated as though the partners engaged in them directly.[25] See Pl.'s Mot. Ex. 1 (Jt. Stip.)

_____

[25]Because plaintiff's Motion addresses the court's jurisdiction rather than the merits of plaintiff's claims, see generally Pl.'s Mem., the court does not here describe or apply the judicial doctrines or the regulatory anti-abuse rule under which this recharacterization could be made, cf. Treas. Reg. 1.701-2(b)(1) (stating that a partnership may be disregarded and its activities treated

ARBITRAGE 00001 (conceding that the statement of grounds is correct); id. at Ex. 2 (Arbitrage FPAA) ARBITRAGE 00006.6 (determining that Arbitrage is to be disregarded and its transactions treated as engaged in by its partners).  When a business entity files a partnership return but is determined not to be a partnership for the tax year at issue, the TEFRA procedural provisions applicable to partnership taxation nevertheless remain applicable.  I.R.C. § 6233(a); Tigers Eye, 138 T.C. at 95-96.  Further, in a partnership-level proceeding, a court may make "determinations with respect to all items of the entity which would be partnership items . . . if such entity had been a partnership in such taxable year."  Temp. Treas. Reg. § 301.6233-1T(a).

Defendant relies on Tigers Eye in support of its position that the court retains jurisdiction in this case to determine items--specifically, the cost basis of the distributed stock--which would have been partnership items had Arbitrage not been disregarded and to determine the applicability of any penalties related to such items.  Def.'s Resp. 20-22.  Defendant's argument is based on the fact that, in Tigers Eye, the Tax Court, having disregarded the partnership for tax purposes, determined that it retained jurisdiction "to treat the partners as having directly purchased the assets distributed by the partnership and to make basis adjustments accordingly, to which penalties could apply."  See Def.'s Resp. 21 & n.15.  Defendant argues that "[t]he Tax Court reasoned that disregarding the partnership caused the basis in the distributed property in the hands of the partners to be reduced from their inflated claimed outside basis to the partnership's cost basis, thereby eliminating the huge losses claimed upon sale."  Id. at 21.  In this case, defendant contends, "disregarding Arbitrage and treating the Gunthers as having directly purchased the distributed stock at a cost of approximately $79,000 results in a disallowance of the huge loss the Gunthers claimed on the stock's sale," thereby creating the potential for a penalty.  Id.

Plaintiff argues that, under Petaluma II and Jade II, "[t]he determination that Arbitrage is a sham does not give rise to partnership-level penalties."  Pl.'s Mem. 15 (emphasis omitted); see also id. at 4, 19 (stating same).  Nor, plaintiff contends, does the determination that Arbitrage was a sham create jurisdiction for the court to adjust or apply a penalty to the outside basis claimed by the partners, which, as an affected item, remains "fruit [that] is forbidden in the partnership proceeding."  Id. at 15.  Plaintiff contends that the government is using Arbitrage's contributions and distributions as a "Trojan horse to enter that forbidden territory."  Id. at 12.  While plaintiff acknowledges defendant's reliance on Tigers Eye and notes that an appeal of Tigers Eye remains

---

as though they were conducted by the purported partners); Coltec, 454 F.3d at 1355-57 (describing the economic substance doctrine); Fid. Int'l Currency Advisor A Fund, LLC v. United States, 747 F. Supp. 2d 49, 225-35 (D. Mass. 2010), aff'd, 661 F.3d 667 (1st Cir. 2011) (describing the economic substance doctrine, the step transaction doctrine, the recharacterization of transactions to reflect their substance rather than their form  and the regulatory anti-abuse rule for partnerships under Treas. Reg. § 1.701-2).

pending before the D.C. Circuit,[26] Pl.'s Reply 2 & n.3, plaintiff does not address or contest the Tax Court's statutory interpretation in <u>Tigers Eye</u> as it relates to penalty jurisdiction pursuant to TEFRA after a partnership has been disregarded.

Ordinarily, when a partner liquidates its interest in a partnership, its basis in any property received is carried over from the partner's basis in the partnership (reduced by any money distributed with the property). I.R.C. § 732(b).  In other words, the partner's basis in property received in liquidation of its partnership interest generally is equal to the partner's outside basis.  <u>See id.</u>  However, when a partnership has been disregarded as an entity for tax purposes, a partner's outside basis in its partnership interest does not carry over because, for tax purposes, no partnership--and, therefore, no carryover basis in the distributed property--exists.  <u>Cf. id.</u> § 6233(a) (providing that only the subchapter of the Tax Code where TEFRA is codified will remain applicable if a partnership is disregarded for tax purposes); <u>Tigers Eye</u>, 138 T.C. at 95-96 (stating that the procedural provisions of TEFRA, as distinguished from substantive partnership tax provisions, will apply with respect to a partnership return filed by such an entity).

Instead, as the <u>Tigers Eye</u> court reasoned, the distributed property of a disregarded partnership should be treated as if it were sold directly to the liquidating partners.  <u>See Tigers Eye</u>, 138 T.C. at 102-03 ("Because Tigers Eye is a sham and had no real business purpose, it merely acted as nominee and agent for the . . . partners and the items related to the transactions involving the option spreads and purchases and distribution of stock and foreign currency are characterized as such."); <u>see also</u> <u>Southgate</u>, 659 F.3d at 492 (recharacterizing acquisition by partnership as a direct sale to the partners after the partnership was disregarded as a sham).  <u>See generally</u> <u>Gregory v. Helvering</u>, 293 U.S. 465, 469-70 (1935) (holding that "an operation having no business or corporate purpose" would not be recognized, although it complied with the letter of the Tax Code, because to do so "would be to exalt artifice above reality"); <u>Fidelity II</u>, 661 F.3d at 670 ("[W]here a transaction has no economic purpose other than to reduce taxes, the IRS may disregard the reported figures as fictions and look through to the underlying substance." (emphasis

---

[26]Plaintiff also notes that the <u>Tigers Eye</u> court found the outside basis of the partners in the partnership to be a partnership item, notwithstanding <u>Petaluma II</u>.  Pl.'s Reply 2 n.3.  Neither party contends that a partner's outside basis in its partnership interest is a partnership item.  Under precedent binding on this court, a partner's outside basis in its partnership interest is an affected item.  <u>Schell v. United States</u>, 589 F.3d 1378, 1381-82 (Fed. Cir. 2009) ("An example of an 'affected item' is a partner's tax basis in his partnership interest, which is affected by partnership items such as partnership income or loss."); <u>accord</u> <u>Jade II</u>, 598 F.3d at 1380.  The court's reliance on <u>Tigers Eye</u> is only with regard to its reasoning that a disregarded partnership acts as the agent or nominee of the partners, so that the purported distribution of property by a disregarded partnership should be treated as a direct sale to the liquidating partners, with the basis of the property determined at the partnership level.  <u>See Tigers Eye</u>, 138 T.C. at 96, 102-03.  This Opinion does not rely on the position of the <u>Tigers Eye</u> court that outside basis is a partnership item.  <u>See id.</u> at 115.

omitted)).  The disregarded partnership is then treated as "an entity that merely acts as nominee and agent for its owners [and] may be disregarded as a separate business entity." Tigers Eye, 138 T.C. at 96 (citing Comm'r v. Bollinger (Bollinger), 485 U.S. 340, 344-45 (1988)).

Consequently, the correct basis of the distributed property of a disregarded partnership is what the partnership paid for the property, cf. I.R.C. § 1012(a) (providing that the basis of property is generally the cost of the property), because the partnership is treated as the partners' agent in acquiring the property, cf. Tigers Eye, 138 T.C. at 108-09 (discussing the partnership's cost basis in distributed items).  It follows that the "determination of the costs of the property [that the disregarded partnership] purchased for the [partners] would be a[] [partnership] item by analogy to" the regulations.  Tigers Eye, 138 T.C. at 148-49 (Halpern, J., concurring); cf. Treas. Reg. § 301.6231(a)(3)-1(c)(3)(iii) (providing that "[t]he adjusted basis to the partnership of distributed property" is a partnership item).  Applying this reasoning, the court has jurisdiction in a partnership-level proceeding to determine the cost basis of property purportedly distributed by a disregarded partnership.  Cf. Temp. Treas. Reg. § 301.6233-1T(a) (providing that a court in a partnership-level proceeding may make "determinations with respect to all items of the entity which would be partnership items . . . if such entity had been a partnership in such taxable year"); Tigers Eye, 138 T.C. at 95 (same).

Additionally, items related to certain partnership transactions are partnership items, "to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner." Treas. Reg. § 301.6231(a)(3)-1(a)(4).  Therefore, although a partnership is disregarded and treated as an agent of the partners in acquiring allegedly distributed property, it nonetheless "ha[s] the information necessary to determine what property it . . . purchased for each [partner] and how much of each [partner]'s money it had expended on those purchases." Tigers Eye, 138 T.C. at 148 (Halpern, J., concurring).  Such determinations are of the type that the disregarded partnership would have "had to make for purposes of its books and records in order to furnish information to the [partners]." Id.  Accordingly, the court has jurisdiction in a partnership-level proceeding to determine how much of each partner's money was spent on property purchased by the disregarded partnership. Cf. Temp. Treas. Reg. § 301.6233-1T(a) (providing that a court in a partnership-level proceeding may make "determinations with respect to all items of the entity which would be partnership items . . . if such entity had been a partnership in such taxable year"); Tigers Eye, 138 T.C. at 95 (same).

If an adjustment to the basis of the purportedly distributed property or to determinations that the disregarded partnership would have had to make for purposes of its books and records would give rise to the accuracy-related penalty, the court also

retains jurisdiction to determine whether the penalty applies.  Cf. I.R.C. § 6226(f) (providing for jurisdiction in a partnership-level proceeding over the applicability of any penalty related to the adjustment of a partnership item).

Here, as in Tigers Eye, 138 T.C. at 134-35, the partners claimed large losses that purportedly occurred when they sold stock distributed by the partnership in liquidation of their partnership interests, see supra Part I.  Moreover, the parties have stipulated that the FPAA correctly determined that Arbitrage is to be disregarded for tax purposes and that its transactions are to be treated as though the partners engaged in them directly.  See Pl.'s Mot. Ex. 1 (Jt. Stip.) ARBITRAGE 00001 (conceding that the statement of grounds is correct); id. at Ex. 2 (Arbitrage FPAA) ARBITRAGE 00006.6 (determining that Arbitrage is to be disregarded and its transactions treated as engaged in by its partners). The parties have therefore stipulated that for tax purposes, there was no distribution of property by Arbitrage to its purported partners; instead, the Xerox stock was purchased by the partners themselves.

Following the reasoning of Tigers Eye, although Arbitrage acted on the partners' behalf in purchasing the Xerox stock, for purposes of taxation, "an entity that merely acts as nominee and agent for its owners may be disregarded as a separate business entity." Tigers Eye, 138 T.C. at 96 (citing Bollinger, 485 U.S. at 344-45).  The court may therefore recharacterize the purchase of the Xerox stock by the partnership as a direct purchase of the stock by the partners and determine that the correct basis of the Xerox stock is not the outside basis of the partners in the partnership, but the cost of the stock.[27] Cf. id. at 96, 102-03; Southgate, 659 F.3d at 492.  See generally I.R.C. § 1012(a) (describing basis).  Because the basis of the Xerox stock would have been a partnership item if Arbitrage were a valid partnership, cf. Treas. Reg. § 301.6231(a)(3)-1(c)(2), the court retains jurisdiction to determine the correct basis of the stock and to determine whether a penalty applies with regard to any adjustment, cf. I.R.C. § 6226(f); Temp. Treas. Reg. § 301.6233-1T(a); Tigers Eye, 138 T.C. at 95.  Moreover, because the determinations of what property Arbitrage purchased on behalf of each partner and how much of each partner's money it spent would have been partnership items if Arbitrage were a valid partnership, cf. Treas. Reg. § 301.6231(a)(3)-1(a)(4); Tigers Eye, 138 T.C. at 148 (Halpern, J., concurring), the court retains jurisdiction to adjust these

---

[27]The Arbitrage FPAA did not specifically address whether the basis of the Xerox stock purportedly distributed by Arbitrage was the cost of the stock instead of the claimed outside basis of the partners in the partnership.  However, the court has jurisdiction in this partnership-level proceeding to determine all partnership items, not merely the items addressed in the Arbitrage FPAA.  Cf. I.R.C. § 6226(f) (stating that a court has jurisdiction in partnership-level proceedings "to determine all partnership items of the partnership for the partnership taxable year"); Temp. Treas. Reg. § 301.6226(f)-1T(a) ("[T]he review is not limited to the items adjusted in the notice.").

determinations and to decide whether a penalty applies with regard to any adjustment, cf. I.R.C. § 6226(f); Temp. Treas. Reg. § 301.6233-1T(a); Tigers Eye, 138 T.C. at 95.

The court is not persuaded that an adjustment to the basis of the purportedly distributed property or to determinations that the disregarded partnership would have had to make for purposes of its books and records would be, as plaintiff claims, using a "Trojan horse to enter . . . forbidden territory." Cf. Pl.'s Mem. 12.  As the Tax Court stated in Tigers Eye, a court in partnership-level proceedings does not "lack[] jurisdiction to determine the applicability of any penalty that relates to a partnership item that happens to be an element of outside basis." Tigers Eye, 138 T.C. at 132.  Indeed, the accuracy-related penalty may apply to the same portion of an underpayment of tax as a result of multiple types of misconduct.  See Treas. Reg. § 1.6662-2(c).  For instance, the accuracy-related penalty may be applicable as a result of both negligence and a gross valuation misstatement.  See id.  However, the penalty components are not stacked, even if they are applicable as a result of multiple types of behavior.  See id.  It is therefore consistent with the penalty framework for the accuracy-related penalty to be applicable for multiple reasons to the underpayment of tax resulting from the loss claimed by the partners on their sale of the Xerox stock.  More specifically, the penalty may relate to the conduct that led to Arbitrage being disregarded and, consequently, to an adjustments to the basis of the purportedly distributed property or to determinations that the disregarded partnership would have had to make for purposes of its books and records, and may also relate, in the alternative, to alleged misconduct by the partners in inflating the outside basis each partner claimed in its partnership interest.  That the first determination is made in partnership-level proceedings and the second is made in partner-level proceedings is consistent with the legislative intent that penalties be applied to partnership conduct in partnership-level proceedings and to partner conduct in partner-level proceedings.  See H.R. Rep. No. 105-148, at 594 (1997), reprinted in 1997 U.S.C.C.A.N. 678, 988 ("Many penalties are based upon the conduct of the taxpayer.  With respect to partnerships, the relevant conduct often occurs at the partnership level.").

Therefore, although plaintiff is correct, see Pl.'s Mem. 4, that the outside basis of the partners is an affected item beyond the court's jurisdiction, Jade II, 598 F.3d at 1380, adjustments to the basis of the purportedly distributed property or to determinations that the disregarded partnership would have had to make for purposes of its books and records can be made independently from the outside basis of the partners in Arbitrage. Consequently, such adjustments--and application of the accuracy-related penalty to such adjustments--are within the jurisdiction of the court because these items would have been partnership items had Arbitrage not been disregarded, cf. I.R.C. § 6226(f); Temp. Treas. Reg. § 301.6233-1T(a).  Jurisdiction exists even though the amount of any resulting penalty to be paid by the partners--if applicable--will not be determined in this partnership-level proceeding.  See Southgate, 659 F.3d at 469 n.4, 492 n.80 (citing, inter alia, Jade II, 598 F.3d at 1379-80).

IV.    Conclusion

The court lacks jurisdiction to consider the applicability of the accuracy-related penalty to the outside basis of the partners in their partnership interests.  Jade II, 598 F.3d at 1380.  However, pursuant to I.R.C. § 6226(f) and to Jade and Petaluma, as interpreted by the Tax Court in Tigers Eye, the court has jurisdiction to determine the applicability of any penalty which relates to an adjustment of Arbitrage's losses or other deductions, to the correct basis of the Xerox stock purportedly distributed to the partners or to determinations that Arbitrage would have had to make for purposes of its books and records, such as the cost of the Xerox stock purchased on the partners' behalf.  See supra Part III.B.1-2, 4.  Plaintiff's contentions that these partnership items do not support penalty jurisdiction and are "surrogates for outside basis," Pl.'s Reply 2-3, are without merit.  Plaintiff's Motion is therefore DENIED.  See RCFC 12(h)(3); Arakaki, 62 Fed. Cl. at 247.

Defendant's motion to strike portions of the Odom Affidavit is GRANTED.  See supra note 17.

The parties SHALL FILE a joint status report--or separate status reports if they cannot agree--at or before 5:00 p.m. Eastern Standard Time on Wednesday, February 20, 2013, proposing a schedule for discovery and further proceedings in this matter.

IT IS SO ORDERED.


                                        s/ Emily C. Hewitt
                                        EMILY C. HEWITT
                                        Chief Judge